IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NES RENTALS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-00015-E |
| | § | |
| ARCH SPECIALTY INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are summary judgment motions filed by plaintiff NES Rentals (NES) and defendant Arch Specialty Insurance Company (Arch) (Docs. 32 & 35). Having considered the motions, the parties' briefing, and applicable law, the Court finds NES's motion should be denied and Arch's motion should be granted.

### BACKGROUND

In March 2013, Rail 1, Inc. (Rail 1) rented an aerial work platform (boom lift) from NES (Doc. 34, pp. 20-21). A credit application and rental account agreement required that Rail 1 carry commercial general liability insurance with limits of not less than $1M per occurrence and $2M in the aggregate for bodily injury and property damage, naming NES as an additional insured, and providing coverage on a primary basis over other insurance (*Id.*). Under the rental account agreement, Rail 1 also agreed to:

> fully indemnify and hold harmless [NES and its affiliates] against any and all costs, claims, demands, or suits, pending or threatened (including cost of defense, attorney's fees, expert witness fees, investigation and all other costs of litigation) for any and all bodily injury, death, destruction, property damages, or any other costs, damages or loss….

1

(*Id.*, p. 24).

Rail 1 subsequently rented the boom lift to Union Pacific Railroad Company (UPRC), which used it for railroad bridge repair work near Mathis, Texas (*see* Doc. 37-6). On September 4, 2013, UPRC employee Arnaldo "Ernie" Barrera, Jr. was operating the boom lift near a bridge when the elevated platform became stuck on a bolt (*see id.*). When Barrera and Pedro Ramon, another UPRC employee, freed the platform from the bolt, kinetic energy stored in the boom caused the boom lift to overturn (*see id.*). Ramon was ejected from the platform and sustained serious and disabling injuries (*see id.*). Barrera was tied off inside the platform and sustained fatal injuries (*see id.*).

In a suit filed October 15, 2013, Ramon sued UPRC, Rail 1, and NES and its affiliates to recover damages caused by and resulting from his injuries (underlying suit).[1]  Barrera's family members intervened in the underlying suit to recover damages caused by and resulting from his death (*Id.*).

On July 29, 2016, NES made a written demand to Rail 1, requesting contractual defense and indemnity pursuant to the terms of the rental account agreement (Doc. 37-2). NES requested that Rail 1 or its insurers indemnify, defend, protect, and hold harmless NES from the claims in the underlying suit (*Id.*). On October 3, 2016, NES also filed a cross-claim against Rail 1 in the underlying suit claiming contractual defense and indemnity (Doc. 37-3).

---

[1] *Ramon v. NES Rental Holdings, Inc.*, No. 2013-CVT-001716-D-1, 49th Judicial District Court of Webb County, Texas, http://publicaccess.webbcountytx.gov/PublicAccess/CaseDetail.aspx?CaseID=514193 (Last accessed September 11, 2020).

NES entered into settlements agreements with Ramon in November 2016 and the Barrera claimants in February 2017.  Pursuant to the agreements, NES paid $150,000 to Ramon and $300,250 to the Barrera claimants (Docs. 37-9, 37-10, 37-11, 37-13).

Arch provided Rail 1 with a defense in the underlying suit pursuant to a Texas Commercial General Liability policy, number RGL0052949-00, covering a policy period from December 26, 2012 to December 26, 3013 (Doc. 34, p. 27).  The policy included a Blanket Additional Insured Endorsement, which amended the policy to "include the person or organization as an insured where required by written contract, but only with respect to liability arising out of your ongoing operations" (Doc. 34, p. 61).

On March 28, 2017, NES sent Arch a demand letter asserting it was entitled to coverage under the policy on a primary basis as an additional insured (Doc. 37-6).  NES advised that it had retained counsel to represent and defend it in the underlying suit and had incurred and paid approximately $405,539.37 for attorney's fees, court costs, and other litigation expenses (*Id.*).  NES demanded that Arch pay $855,785.37, representing those costs and the settlement amounts it paid to Ramon and the Barrera claimants (*Id.*).  NES did not provide its attorney fee invoices or the settlement agreements with its demand letter (Doc. 37-7).

On June 6, 2017, Arch wrote NES that Arch was "unable to recognize NES as any additional insured for any scope of coverage at this time" and asked NES to provide any relevant information if it believed Arch's conclusion was incorrect or if NES had additional information (Doc. 37-7).  Arch also noted that it had requested, but not received, copies of attorney fee and cost statements, the settlement documents, or evidence of settlement payments in the underlying

3

suit (*Id.*). Arch reserved it rights under the policy to deny or limit coverage relating to the underlying suit, "even if based on additional or alternative reasons than those referenced" (*Id.*).

In November 2018, NES filed this suit against Arch, contending Arch breached its contractual obligations under the policy by denying NES recognition as an additional insured (Doc. 1-5). Based on this alleged breach, NES also asserts extra-contractual claims against Arch for breach of the duty of good faith and fair dealing and violations of chapters 541 and 542 of the Texas Insurance Code (*Id.*).

NES moves for summary judgment, seeking a declaration that Arch owed a duty to defend and indemnify NES as an additional insured with respect to the underlying suit and judgment that NES is entitled to recover the amounts it incurred in its defense. Arch also moves for summary judgment, seeking dismissal of NES's claims because NES failed to comply with the policy's conditions requiring NES to notify Arch of the underlying suit, cooperate in the defense, and not incur costs and liabilities without Arch's consent.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion.

*Id.*; *Anderson*, 477 U.S. at 254.

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense or (2) arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Id.* at 324. A court "resolve[s] factual controversies in favor of a nonmoving party … only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

## ANALYSIS

NES contends it is entitled to a defense and indemnity under the policy, directing the Court to the relevant policy provisions and evidence to support the fact that it is an additional insured. Arch responds, and urges in its summary judgment motion, that, even assuming NES is an additional insured, NES is not entitled to either a defense or indemnity because it did not satisfy its obligations under the policy to provide notice of the underlying suit and obtain Arch's consent before incurring its defense expenses and making the settlement payments.

5

The parties agree that Texas law applies to NES's claims. Insurance policies are contracts and, therefore, subject to the rules that apply to contracts generally. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). To establish a breach of contract, a plaintiff "must prove (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance as the contract required, (3) the defendant breached the contract by failing to perform or tender performance as the contract required, and (4) the plaintiff sustained damages as a result of the breach." *Menchaca*, 545 W.S.3d at 501, n.21.

The duties to defend and indemnify an insured are "distinct and separate duties." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252–53 (5th Cir. 2011) (quoting *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997)). "The duty to defend means the insurer will defend the insured in any lawsuit that 'alleges and seeks damages for an event potentially covered by the policy, while the duty to indemnify means the insurer will 'pay all covered claims and judgments against an insured.'" *Id.* at 253 (quoting *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.,* 300 S.W.3d 740, 743 (Tex. 2009)). An insured bears the initial burden of presenting sufficient facts to demonstrate coverage under the policy. *Gilbert Tex. Constr. v. Underwriters at Lloyd's*, 327 S.W.3d 118, 124 (Tex. 2010). Interpretation of the insurance policy is a question of law. *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014). Whether an insurer has a duty to defend its insured also is a question of law, *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009), and "depends on the language of the policy setting out the contractual agreement between insurer and insured." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009).

The Arch policy imposes specific duties on an insured in the event of a suit (Doc. 37-1, p. 22). Among other duties, an insured is required to (1) immediately send Arch copies of any demands, notices, summonses or legal papers received in connection with a claim or suit, (2) assist Arch and cooperate in the investigation or settlement of the claim or defense of the suit, and (3) provide Arch access, upon its request, to all records, information, and investigation regarding claims or suits against the insured (*Id.*). The policy also prohibits an insured, except at its own cost, from voluntarily making a payment, assuming any obligation, or incurring any expense, other than for first aid, without Arch's consent (*Id.*).

Under Texas law, "[c]ompliance with the notice of suit provision is a 'condition precedent to the issuer's liability on the policy.'" *Nautilus Ins. Co. v. Miranda-Mondragon*, 711 F. App'x 214, 216 (5th Cir. 2017) (quoting *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173–74 (Tex. 1995)); *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606–10 (Tex. 2008). "[N]otice and delivery-of-suit-papers provisions in insurance policies serve two essential purposes: (1) they facilitate a timely and effective defense of the claim against the insured, and more fundamentally, (2) they trigger the insurer's duty to defend by *notifying the insurer that a defense is expected*." *Crocker*, 246 S.W.3d at 608. An insurer's "awareness of a claim or suit does not impose a duty on the insurer to defend under the policy; there is no unilateral duty to act unless and until the additional insured first *requests* a defense—a threshold duty that the insured fulfills under the policy by notifying the insurer that the insured has been served with process and the insurer is expected to answer on its behalf." *Id.*

An insured's failure to comply with a policy's notice provisions will absolve an insurer from its obligations under a policy if the lack of compliance prejudices the insurer. *Id.* at 609;

7

*PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636–37 (Tex. 2008).  Texas courts generally "treat prejudice as a question of fact unless one side proffers no evidence."  *Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp.3d 539, 551 (N.D. Tex. 2015).

In considering prejudice, the Texas Supreme Court has distinguished between "tardy notice," which requires that the insurer show that it was "actually prejudiced by the delay," and "wholly lacking" notice.  *Crocker*, 246 S.W.3d at 609.  And, when an insured fails to comply with a commercial general liability policy's notice provisions until after there has been a judgment, verdict, or settlement in an underlying suit, courts have held the notice was wholly lacking and prejudicial to the insurer as a matter of law.  *See Crocker v. Nat'l Union Fire Ins. Co.*, 526 F.3d 240, 241 (5th Cir. 2008) (directing entry of summary judgment for insurer on plaintiff's claims for breach of duties to defend and indemnify additional insured with respect to default judgment when additional insured did not provide notice of underlying suit and request defense); *Nautilus Ins. Co.*, 711 F. App'x at 216 (prejudice exists as matter of law when insurer first received notice of suit after default judgment entered); *Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, 600 F. Appx. 230, 231–36 (5th Cir. 2015) (post-verdict notice to excess insurer was "wholly lacking" and prejudicial as a matter of law); *Maryland Casualty Co. v. American Home Assurance Co.*, 277 S.W.3d 107, 117 (Tex. App—Houston [1st Dist.] 2009, pet. dism'd by agr.) (finding prejudice as matter of law when notice was provided after additional insured had settled claims against it in underlying suit) *Jenkins v. State & County Mut. Fire Ins. Co.*, 287 S.W.3d 891, 898–99 (Tex. App.—Fort Worth 2009, pet. denied) (insurer prejudiced as matter of law, even though it had actual notice of underlying suit, because it had not been notified of suit as contractually required); *Motiva Enters.,*

*LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006) (insurer prejudiced as matter of law when it was not consulted about settlement in underlying suit).

As in the cases cited above, NES did not seek a defense or coverage from Arch under the policy until after the claims against NES in the underlying suit were resolved. Arch had knowledge of the underlying suit through its representation of Rail 1, but that knowledge did not impose any duty on Arch to provide a defense absent NES's request that Arch do so. *See Crocker*, 246 S.W.3d at 608. Nor did Arch have the opportunity to defend the claims against NES while the claims remained pending or review, consider, and consent to the settlement agreements with Ramon and the Barrera claimants.

NES nevertheless contends that its July 2016 demand for contractual defense and indemnity and its cross-claim against Rail in the underlying suit made clear that NES expected a defense from Arch and constituted substantial compliance with the policy's notice requirements. The Court disagrees. Neither the letter nor the cross-claim provided Arch, or Rail 1, with any notice that NES claimed to be an additional insured or that it sought a defense or coverage under the policy. *See Maryland Casualty Co.*, 277 S.W.3d at 111, n.7.

NES also contends that Arch was not prejudiced by NES's alleged failure to comply with the Policy's notice requirements. Specifically, NES asserts that Arch would have rejected the opportunity to defend NES even if Arch had received timely notice. As evidence, NES cites Arch's June 6, 2017 letter, which addresses NES's status as an additional insured but not its failure to comply with the policy's notice requirements. The letter conveys Arch's position that it was "unable to recognize NES as any additional insured for any scope of coverage at this time" and reserved Arch's rights under the policy to deny or limit coverage related to the underlying suit

9

even if based on additional or alternative reasons than those referenced (Doc. 37-7).[2]  The letter, however, does not show that, had NES provided timely notice, Arch would not have provided a defense, subject to a reservation of rights or otherwise.  Further, regardless of whether Arch would have actually participated in NES's defense in the underlying suit, Arch lost valuable rights associated with doing so because NES did not comply with the policy's notice and consent to settlement provisions.  *See Berkley Reg. Ins. Co. v. Philadelphia Indemnity Ins. Co.*, No. A-1-CA-362-SS, 2013 WL 6145979, *9 (W.D. Tex. Nov. 21, 2013), *aff'd*, 600 F. App'x 230.

Arch is entitled to rely upon the policy's notice and consent to settlement provisions despite the fact that it had notice that NES had been sued in the underlying action.  *Crocker*, 246 S.W.3d at 608.  Notice, and a demand for defense and indemnity, was provided only after the claims had been settled, precluding Arch from participating in the defense in any way, including consulting and consenting with respect to the settlements.  On this summary judgment record, the Court finds Arch was prejudiced as a matter of law by NES's failure to comply with the policy provisions and is relieved of liability under the policy.  *See, e.g., Nautilus Ins. Co.*, 711 F. App'x at 216;  *Maryland Casualty Co.*, 277 S.W.3d at 111;  *Crocker*, 526 F.3d at 241;  *Motiva Enters., LLC*, 445 F.3d at 386–87.  Accordingly, Arch is entitled to summary judgment on NES's breach of contract claim.[3]

Arch also moves for summary judgment on NES's extracontractual claims, asserting those claims cannot survive because Arch has no duty to indemnify NES under the policy.  In response,

---

[2]  Relevant to the policy's notice provisions, Arch wrote in the June 2017 letter that it had requested, but not received, copies of attorney fee and cost statements, the settlement documents, or evidence of settlement payments in the underlying suit (Doc. 37-7).

[3]  Because NES neither established, nor raised a genuine dispute as to whether, it performed or tendered performance under the policy related to the notice and consent to settlement provisions, the Court need not determine if it was an additional insured under the policy.

10

NES relies on its arguments that it was entitled to receive benefits under the policy as an additional insured. As discussed above, however, the Court finds otherwise.

With respect to its extra-contractual claims, NES alleges Arch violated the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of, and promptly pay, NES's claim. *See* TEX. INS. CODE ANN. §§ 541.060 & 542.052, *et seq*. NES also asserts Arch breached the implied covenant of good faith and fair dealing by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of NES's claim and applying an arbitrary and objectively unreasonable interpretation of the policy to NES's claim.

Generally, "[w]hen the issue of coverage is resolved in the insurer's favor," extra-contractual claims, including violations of chapters 541 and 542 of the Texas Insurance Code and breach of the duty of good faith and fair dealing do not survive. *See Menchaca*, 545 S.W.3d at 493–94, 497; *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010). The general rule applies to preclude recovery unless the plaintiff can show an injury independent of the right to policy benefits. *Menchaca*, 545 S.W.3d at 499–500 (exception to the general extra-contractual claims rule is when the insurer commits an act, so extreme, that it would cause injury independent of the policy claim).

NES has not produced any evidence to show the conduct it complains of does not relate to Arch's failure to indemnify NES under the policy. Nor has NES produced any evidence, or even alleged, that its extra-contractual claims are based on an injury independent of the alleged denial of coverage under the policy. After reviewing all the summary judgment evidence in the light most favorable to NES, the Court finds the general rule applies to bar NES's extra-contractual

11

claims and Arch's summary judgment motion also should be granted as to those claims. *See Menchaca*, 545 S.W.3d at 489; *Page*, 315 S.W.3d at 532.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiff NES Rental's Motion for Summary Judgment (Doc. 33) and **GRANTS** defendant Arch Specialty Insurance Company's Motion for Summary Judgment (Doc. 35).

**SO ORDERED;** signed September 11, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE